UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KHALED ABUBLAKAN,

        Petitioner,

    v.

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
ATTORNEY GENERAL OF THE
UNITED STATES, U.S.
IMMIGRATION CUSTOMS
ENFORCEMENT, WARDEN
MATTHEW MORDANT, OFFICIAL
CAPACITY AS WARDEN OF
FLORIDA SOFT SIDE SOUTH,

        Respondents.

Case No. 2:26-cv-109-KCD-DNF

## ORDER

Petitioner Khaled Abublakan has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment and the Immigration and Nationality Act ("INA"). (*Id.* at 3.)[2] Respondents oppose the petition. (Doc. 5.) For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] The Petition is not paginated, so the Court cites the page numbers generated by its electronic filing system.

Abublakan, a native of Saudi Arabia, illegally entered the United States in 1991 on a student visa. (Doc. 5-1 at 1.) Following a criminal conviction for battery in 1994, he was placed in removal proceedings, and an immigration judge ordered him removed. (Doc. 5-2 at 1.) Abublakan was then convicted of another violent felony. (*Id.*) In 2002, the Government requested travel documents from Saudi Arabia, which were denied. (*Id.*) Shortly after, Abublakan reopened removal proceedings—but he was again ordered removed through a final order. (*Id.* at 2.) Abublakan was released on an order of supervision. (*Id.*)

Years later, Abublakan was arrested for a violent crime. (*Id.*) The Government again unsuccessfully requested travel documents from Saudi Arabia. (*Id.*) After his conviction and prison term, he was released on another order of supervision. (*Id.*) Between 2017 and 2020, there were efforts to obtain travel documents from Saudi Arabia, Egypt, Sweden, China, and the Palestinian Authority. (*Id.*) There was then no activity until November 2025. (*Id.*) That month, the Government issued a Warrant of Removal/Deportation. (Doc. 5-1 at 4-5; Doc. 5-2 at 2.) On November 10, 2025, Abublakan was taken into ICE custody. (Doc. 5-1 at 2.) In December 2025, DHS again requested travel documents from Saudi Arabia, which has yet to respond. (Doc. 5-2 at 3.)

So far, ICE has been unable to find a country to accept Abublakan, but they are working towards executing removal to Saudi Arabia. (Doc. 5 at 3; Doc. 5-2 at 3.)  ICE believes there is a significant likelihood of removal in the reasonably foreseeable future. (*Id.*) Abublakan argues the opposite—that there is no likelihood he will be removed in the reasonably foreseeable future. So he challenges the legality of his detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and requests an order releasing him from immigration detention. (Doc. 1 at 4.)

In *Zadvydas*, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. 533 U.S. at 701. Further, the Court concluded that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). After that six-month period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention

3

in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Abublakan's petition is premature because he has not been detained for longer than six months. Indeed, Abublakan states that he "has now been detained for approximately four months post-arrest," but then jumps to the burden-shifting framework, arguing that "his current detention serves no legitimate immigration purpose where removal is not significantly likely in the reasonably foreseeable future." (Doc. 1 ¶ 27.) But until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"). This position finds support in other Supreme Court decisions. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (after the six-month period, "if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release

4

the alien"); *see also Jiang v. Mukasey*, No. 2:08-cv-773-FtM-29DNF, 2009 WL 260378, at \*2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-cv698-FtM-29SPC, 2011 WL 6412425, at \*2 (M.D. Fla. Dec. 21, 2011).

Thus, Abublakan's due process claim under *Zadvydas* is not yet ripe, and the habeas petition is denied without prejudice. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on March 4, 2026.

Kyle C. Dudek
United States District Judge